UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                        :

JAMES GARSON,                    :
                                         :

                       Plaintiff,      :

                      v.                 :

ROBIN GARSON, *individually and as*    :
*voluntary administrator of the Estate*    :
*of Gerald P. Garson,* and the ESTATE    :
of GERALD P. GARSON,          :
                                         :

                     Defendants. :
                                         :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __July 6, 2017__

16 Civ. 6167 (KPF)

AMENDED
OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:[1]

      The allegations in Plaintiff's Second Amended Complaint (the "SAC"), which the Court must accept as true for the purposes of this Opinion, paint a picture of an unfortunate intrafamilial dispute that occurred many years ago; the crux of the instant motion is whether they occurred too many years ago to support timely claims under New York law. Plaintiff James Garson extended a $210,000 loan in 2007 to his stepmother, Defendant Robin Garson, and his father, the now-deceased Gerald P. Garson. Initially by oral agreement, Plaintiff offered to provide the loan to help the Garsons pay legal, medical, and personal expenses while they were under criminal investigation for judicial misconduct. In return, the Garsons agreed to repay Plaintiff from the proceeds

---

[1]     Alexandra Munson, a rising second-year student at the University of Pennsylvania Law School and an intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

from either (i) one or more of their life insurance policies (collectively, the "Insurance Policies"); or (ii) the sale or refinancing of the Garsons' cooperative apartment on East 74th Street in Manhattan (the "Apartment," and together with the Insurance Policies, the "Assets"). The parties memorialized the terms of their oral agreement in two documents. Robin Garson first signed a handwritten letter on behalf of the Garsons, confirming the oral agreement and pledging to repay Plaintiff using either category of Assets. Thereafter, she signed a Promissory Note on behalf of Gerald Garson alone that allowed Plaintiff to seek repayment no earlier than nine months after the Note's date of execution from any "collateral pledged."

Plaintiff sought repayment of the loan using the proceeds of Gerald Garson's life insurance policy, which became payable in February 2016. Robin Garson received the proceeds in her capacity as administrator of Gerald Garson's estate (the "Estate"), but refused to provide them at Plaintiff's request. Additionally, Robin Garson neither sold nor refinanced the Apartment. In consequence, Plaintiff brought this action on August 3, 2016, against Robin Garson, individually and as voluntary administrator of the Estate (collectively, "Defendants").

Plaintiff alleges three causes of action in his SAC. He claims first that Defendants breached their oral agreement, memorialized by Robin Garson's handwritten letter, to repay Plaintiff with the Assets. Alternatively, Plaintiff claims that Defendants were unjustly enriched at Plaintiff's expense because they received a $210,000 loan that they continue to refuse to repay. Finally,

and relatedly, Plaintiff seeks to establish a constructive trust over the Assets, the proceeds of which Defendants ostensibly pledged as security for the loan.

Defendants have moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's allegations are untimely and meritless. Because this Court disagrees with both arguments, at least at this stage of the litigation, it denies the motion.

## BACKGROUND[2]

### A.    Factual Background

#### 1.    The Loan and Initial Oral Agreement

Plaintiff is the stepson of Robin Garson and the son of the late Gerald P. Garson. At the time Plaintiff filed his initial complaint on August 3, 2016, he was a citizen and resident of New Jersey. (SAC ¶¶ 6, 10). Robin Garson is a citizen and resident of New York, where she also administers the Estate. (*Id.* at ¶¶ 7, 9-12).

Robin Garson and Gerald Garson were under criminal investigation in 2007 for judicial misconduct. (SAC ¶¶ 1, 14). At the same time, Gerald Garson was battling a serious illness. (*Id.*). Plaintiff extended a $210,000 loan that same year to Robin and Gerald to assist them with the financial demands

---

[2]    This Opinion draws on facts from the SAC (Dkt. #17) and the exhibits attached thereto ("SAC, Ex. [ ]" (Dkt. #17-1 through 17-7)). *See, e.g., Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing documents that may be considered in Rule 12(b)(6) context). For the purpose of citing to the SAC, the Court uses the paragraph numbers assigned by Plaintiff. For ease of reference, the Court refers to Defendants' memorandum in support of its motion to dismiss as "Def. Br." (Dkt. #23), to Plaintiff's response as "Pl. Opp." (Dkt. #26), and to Defendants' reply memorandum in further support of their motion to dismiss as "Def. Reply" (Dkt. #27).

of the criminal investigations, Gerald's medical needs, and various personal expenses.  (*Id.* at ¶ 14).

At the time Plaintiff extended the loan, Robin and Gerald Garson orally agreed to repay Plaintiff using proceeds from either (i) one or more of their Insurance Policies; or (ii) the sale or refinancing of the Apartment.  (SAC ¶¶ 2, 16).  The triggering events for the repayment of Plaintiff's loan from the Assets were keyed to the nature of each Asset:  The proceeds from the Insurance Policies were to be paid either upon the death of Robin or Gerald Garson, or upon termination of the policies before maturity.  (*Id.* at ¶ 16).  The proceeds from the Apartment were to be issued to Plaintiff after the sale of its shares or a refinancing of the mortgage.  (*Id.* at ¶¶ 2, 16, 18).

### 2.    The Subsequent Written Agreements

Two written agreements followed the parties' initial oral agreement.  (SAC ¶¶ 2, 18-20).  On June 4, 2007, Robin Garson handwrote a letter (the "June 4 Letter") confirming the oral agreement.  (*Id.* at ¶¶ 2, 18; *see also id.*, Ex. A at 1).  According to the SAC, Robin signed the letter in her own name and on behalf of Gerald Garson, who was by that time incarcerated.  (*Id.*; *but cf.* Def. Br. 4 n.2 (noting that Gerald Garson's term of incarceration began on June 28, 2007)).[3]  The June 4 Letter reads, in relevant part:

> That money extended to me or to Gerald Garson as a
> loan is hereby secured by either of the following:

---

[3]    The June 4 Letter was signed by Robin Garson in her own name, but it is less clear that Robin also signed on behalf of (or was authorized to bind) her husband.  (SAC, Ex. A at 1).

> 1. The profits from the sale of the shares representing the corresponding interest in our apartment's cooperative corporation <u>or</u> the proceeds of the refinance of the co-op mtg. and/or
>
> 2. The proceeds of any life insurance policy either upon the death of either Robin or Gerald Garson, or the surrender value of that/those policies.
>
> The above to be formalized by written contract or any combination of the above.

(SAC, Ex. A at 1 (emphasis in original)).

In September 2007, Plaintiff's counsel drafted three loan documents — a Promissory Note, a Cooperative Loan Security Agreement, and an Authorization to File Financial Statement — as contemplated by the June 4 Letter. (SAC ¶ 19; *see also id.*, Ex. B, C, D). Robin Garson signed the Promissory Note on October 23, 2007. (*Id.* at ¶ 20; *id.*, Ex. E at 1). But she refused to sign the Promissory Note in her personal capacity. (*Id.* at ¶ 21). Instead, Robin Garson signed it only as "attorney in fact" for her husband. (*Id.*).

Robin Garson made two potentially significant handwritten changes to the Promissory Note prior to signing it. (SAC ¶ 22). First, she changed the date after which Plaintiff could request repayment of the loan. (*Id.*). The Promissory Note's original language provided that Plaintiff's loan would be "payable on demand … in no event sooner than *eight (8)* months from the date hereof[.]" (*Id.*; *id.*, Ex. B, E (emphasis added)). Prior to signing, Robin crossed out "eight (8)" and substituted "nine (9)" in its place. (*Id.*). Second, the Promissory Note originally provided that Plaintiff "shall *not* be required to look to any collateral pledged or held by it for the payment of this Note, but may

proceed against the Maker in such manner as it deems desirable." (*Id.* at ¶ 22; *id.*, Ex. B, E (emphasis added)). Robin crossed out the word "not" prior to signing, though this emendation arguably rendered the second half of the sentence moot. (*Id.*).

### 3. The Demand Letter

Gerald Garson died in February 2016. (SAC ¶¶ 4, 23). Robin Garson, as administrator of the Estate, thereafter received the proceeds of an insurance policy in Gerald's name (the "Insurance Policy"). (*Id.*). Plaintiff demanded the proceeds of the Insurance Policy from Robin as repayment for the loan following his father's death. Robin refused. (*Id.* at ¶¶ 4, 23-24).

Plaintiff's counsel sent a letter to Robin Garson on May 2, 2016 (the "Demand Letter"). (SAC ¶ 26; *id.*, Ex. G at 1). The Demand Letter sought, *inter alia*, "any life insurance proceeds payable on the life of Gerald Garson" and "any and all loan and security documents relating to [Defendants'] ownership of the cooperative apartment." (*Id.*, Ex. G at 3). When Robin again refused to repay the loan, Plaintiff commenced this lawsuit. (*Id.* at ¶ 4).

## B. Procedural Background

Plaintiff filed his Complaint on August 3, 2016. (Dkt. #1). The next day, Plaintiff filed a First Amended Complaint, which differed from its predecessor in that it attached Exhibits A through G. (Dkt. #5). The Court held an initial conference to discuss Defendants' proposed motion to dismiss Plaintiff's First Amended Complaint on October 27, 2016. (10/27/16 Conf. Tr. 1; *see* Dkt. #13).

Plaintiff filed his Second Amended Complaint — the operative complaint in this case — on November 11, 2016. (Dkt. #17). Defendants filed a motion to dismiss on December 16, 2016. (Dkt. #22-24). Plaintiff opposed the motion on February 6, 2016 (Dkt. #25-26), and briefing concluded when Defendants filed their reply brief on February 3, 2017 (Dkt. #27).

## DISCUSSION

Defendants assert two core arguments. First, Defendants argue that Plaintiff's three causes of action — breach of contract, unjust enrichment, and constructive trust — are time-barred because their respective statutes of limitations have run. Second, and in the alternative, Defendants argue that the SAC fails to state a claim for relief as to each cause of action. Both arguments fail because of fundamental disputes between the parties concerning the operative agreements and the acts constituting breaches thereof; the Court addresses each argument in turn.

## A. All Three Causes of Action in Plaintiff's Second Amended Complaint Are Timely

### 1. Applicable Law

Although "[t]he lapse of a limitations period is an affirmative defense that a defendant [typically] must plead and prove ... courts permit defendants to raise timeliness arguments in a Rule 12(b)(6) motion where they appear on the face of the complaint." *Fogel* v. *Wal-Mart de México SAB de CV*, No. 13 Civ. 2282 (KPF), 2017 WL 751155, at *6 (S.D.N.Y. Feb. 27, 2017) (internal quotation marks omitted) (quoting *Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008)). A defendant will not prevail on such a defense unless

"it is clear on the face of the complaint that the statute of limitations has run."
*Commerzbank AG* v. *Deutsche Bank Nat'l Trust Co.*, — F. Supp. 3d —, No. 15
Civ. 10031 (JGK), 2017 WL 564089, at *3 (S.D.N.Y. Feb. 10, 2017) (internal
quotation marks omitted) (quoting *Fargas* v. *Cincinnati Mach., LLC*, 986 F.
Supp. 2d 420, 427 (S.D.N.Y. 2013)).  Thus, a "Court can only grant a motion to
dismiss based on statute of limitations grounds if there is no factual question
as to whether the alleged violations occurred within the statutory period[.]"  *In
re Mirena IUD Prod. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014)
(internal quotation marks omitted) (quoting *Clement* v. *United Homes, LLC*, 914
F. Supp. 2d 362, 369 (E.D.N.Y. 2012)).

In New York, which the parties agree supplies the governing law (*see,
e.g.*, Def. Br. 11; Pl. Opp. 7), "[t]he time within which an action must be
commenced, except as otherwise expressly prescribed, shall be computed from
the time the cause of action accrued to the time the claim is interposed."  N.Y.
C.P.L.R. 203(a) (McKinney 2001).  Whether Plaintiff's causes of action are
timely turns on two questions:  When did those causes of action accrue?  And
how long are their statutes of limitations?

Considering first the issue of accrual, the Court notes that New York law
specifies different accrual dates for each of Plaintiff's three causes of action.
"In New York, a breach of contract cause of action accrues at the time of the
breach."  *Mister Softee, Inc.* v. *Tsirkos*, No. 14 Civ. 1975 (LTS) (RLE), 2015 WL
7458619, at *6 (S.D.N.Y. Nov. 23, 2015) (internal quotation marks omitted)
(quoting *Ely-Cruikshank Co.* v. *Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)).  A

claim for unjust enrichment accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Spiro* v. *Healthport Techs., LLC*, 73 F. Supp. 3d 259, 277 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Matana* v. *Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013)). And a constructive trust claim "accrues when the acts occur upon which the claim of constructive trust is predicated, the wrongful withholding[.]" *Kohan* v. *Nehmadi*, 130 A.D.3d 429, 430 (2d Dep't 2015) (internal quotation mark and citation omitted); *accord Jaffer* v. *Hirji*, No. 14 Civ. 2127 (KMK), 2017 WL 1169665, at *8 (S.D.N.Y. Mar. 28, 2017) ("The statute of limitations for a constructive trust claim starts to run upon the occurrence of the wrongful act giving rise to a duty of restitution. ... In general, the date of the 'wrongful act' is the date that the party holding legal title takes some action that is inconsistent with the promise he made to the transferor." (internal quotation marks and citations omitted)).

Under New York law, claims for breach of contract and constructive trust share the same limitations period: To be timely, those claims must be brought within six years of their accrual. *Lehman XS Trust* v. *Greenpoint Mortg. Funding, Inc.*, No. 12 Civ. 7935 (ALC), 2017 WL 1293773, at *6 (S.D.N.Y. Mar. 29, 2017) (breach of contract); *Hirji*, 2017 WL 1169665, at *8 (constructive trust). The limitations period for an unjust enrichment claim, by contrast, depends on the type of relief that a plaintiff seeks. *Matana*, 957 F. Supp. 2d at 494. "The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages." *Id.* (citing

*Ingrami* v. *Rovner*, 45 A.D.3d 806, 808 (2d Dep't 2007)). But where unjust enrichment and breach of contract are pled as alternative claims, a six-year statute of limitations period applies. *Voiceone Commc'ns, LLC* v. *Google Inc.*, No. 12 Civ. 9433 (PGG), 2014 WL 10936546, at *11 (S.D.N.Y. 2014) (quoting *Maya NY, LLC* v. *Hagler*, 106 A.D.3d 583, 585 (1st Dep't 2013)).

### 2.    Analysis

Stated simply, Defendants fail to prove that Plaintiff's breach of contract, unjust enrichment, and constructive trust claims are time-barred because, as pled in the SAC, each claim's accrual date fell within the relevant six-year statute of limitations. That is, taking the Complaint's factual allegations as true, each claim accrued in the first half of 2016, when Defendants first denied Plaintiff the proceeds from Gerald Garson's Insurance Policy. Plaintiff brings timely claims because he commenced this action that same year.

In their motion, Defendants mount various arguments concerning the proper accrual date and limitations period. Those arguments are discussed, and rejected, in the remainder of this section.

*Breach of Contract.* Defendants argue that Plaintiff untimely filed his breach of contract claim because the time to demand repayment on the Promissory Note expired two years before Plaintiff brought suit. (Def. Br. 12). The language of the Promissory Note — which Defendants posit is the only valid, operative agreement — requires repayment "in no event sooner than nine (9) months" from the date of execution on October 23, 2007. (*Id.* at 12-13). Defendants argue from this provision that the time for Plaintiff to demand

10

repayment accrued on July 23, 2008, and thus his breach of contract claim expired six years later on July 23, 2014. (*Id.* at 12). As a fallback position, Defendants argue that, even if the parties' oral agreement constituted a valid contract, Plaintiff's cause of action is barred because it expired six years after the agreement was made in 2007. (*Id.*).

Defendants' arguments in this regard founder because the June 4 Letter and the Promissory Note, considered together, indicate that the breach occurred when Robin Garson refused to give Plaintiff the proceeds of Gerald Garson's Insurance Policy. Defendants argue that the Promissory Note specifies an "unambiguous" accrual date of July 23, 2008. (Def. Br. 14-15). But a plain reading of the June 4 Letter memorializing the parties' oral agreement suggests otherwise. The June 4 Letter states that Plaintiff's $210,000 loan is "secured" by the Insurance Policies *or* the share certificates for the Apartment. (SAC, Ex. A at 1). This would suggest, as Plaintiff does, that the accrual date for his breach of contract claim was conditioned upon either one or more of the Insurance Policies becoming payable or the share certificates to the Apartment being sold or refinanced. (Pl. Opp. 9-10). And where a contract or a "right to payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled." *Hanh Auto. Warehouse, Inc.* v. *Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012) (quoting *John J. Kassner & Co.* v. *City of New York*, 46 N.Y.2d 544, 550 (1979)). Therefore, Plaintiff timely filed his breach of contract claim

because the claim accrued when Defendants received the Insurance Policy proceeds but refused to give them to Plaintiff.

*Unjust Enrichment.* Defendants' unjust enrichment arguments proceed from a similarly flawed analysis. Defendants argue that the monetary damages Plaintiff seeks in the SAC subject his unjust enrichment claim to a three-year, not a six-year, statute of limitations. (Def. Br. 15 (citing *Kermanshah* v. *Kermanshah*, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008))). Thus, Defendants contend that Plaintiff's time to demand repayment of the loan expired on July 23, 2011, or three years after the date when "[P]laintiff could have [made] a demand for payment" on the Promissory Note. (*Id.* at 16).

Defendants are wrong as to both the relevant limitations period and its accrual date. As a preliminary matter, Defendants are correct that a three-year statute of limitations governs when a plaintiff seeks monetary relief. *Matana*, 957 F. Supp. 2d at 494. And it is true that Plaintiff seeks both monetary and equitable relief in requesting "[c]ompensatory damages in the amount of $210,000" and a "constructive trust over the Life Insurance Proceeds ... and the Apartment." (SAC ¶ 49). But here, the nature of relief does not matter. Because Plaintiff pleads breach of contract and unjust enrichment as alternative claims, the limitations period is six years, not three. *Voiceone*, 2014 WL 10936546, at *11 (citing *Maya*, 106 A.D.3d at 585).

What is more, the unjust enrichment claim began to accrue only in 2016, when Defendants received the proceeds from Gerald Garson's Insurance Policy but refused to give them to Plaintiff. Under New York law, an unjust

enrichment claim accrues "upon the occurrence of the wrongful act." *Cohen* v.
*S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (internal quotation
marks omitted) (quoting *Coombs* v. *Jervier*, 74 A.D.3d 724, 724 (2d Dep't
2010)). Here, a most obvious reading of the SAC and the exhibits attached
thereto suggests that the wrongful act occurred after Gerald Garson's death in
February 2016. Both the June 4 Letter and the Promissory Note secure
repayment of the loan with the Assets. (SAC, Ex. A, E). Securing the loan with
the Assets suggests that Defendants would repay the loan with funds realized
from the Assets only at the time those funds were realized. Once Robin Garson
refused Plaintiff's request to repay the loan after receiving the Insurance Policy
proceeds, Defendants were unjustly enriched.

*Constructive Trust.* Finally, Defendants argue that Plaintiff untimely filed
his constructive trust claim because it is predicated on a time-barred breach of
contract claim. (Def. Br. 16). Not so. A cause of action to impose a
constructive trust also accrues on the date of a "wrongful act." *Hirji*, 2017 WL
1169665, at *8. Here, Defendants claim, the "wrongful act" that gives rise to
Plaintiff's unjust enrichment claim "occurred in September/October 2007 when
Robin Garson 'refused to sign the Loan Documents.'" (Def. Br. 17 (quoting SAC
¶ 20)). In point of fact, the "wrongful act" occurred when Robin Garson refused
Plaintiff's request to repay the loan with the Insurance Policy proceeds.

To be sure, Defendants correctly state that a cause of action for imposing
a constructive trust begins to run "upon the occurrence of the wrongful act
giving rise to a duty of restitution." *Barone* v. *Barone*, 130 A.D.3d 765, 766 (2d

Dep't 2015) (internal quotation marks omitted) (quoting *Sitkowski* v. *Petzing*, 175 A.D.2d 801, 802 (2d Dep't 1991)). However, the "wrongful act" giving rise to a constructive trust claim is limited to instances where the "constructive trustee acquired property wrongfully" or "wrongfully withholds property acquired lawfully from the beneficiary, in which case ... [he] breaches or repudiates the agreement to transfer the property." *Morris* v. *Gianelli*, 71 A.D.3d 965, 967 (2d Dep't 2010). Because Robin Garson did not acquire any property when she refused to sign the other loan documents, she repudiated her agreement to provide the Assets only when one of those Assets, the Insurance Policy proceeds, became available.

The June 4 Letter and the October 2007 Promissory Note reveal that Robin Garson, whether in her personal capacity or on behalf of Gerald Garson, agreed to repay the loan using the Assets. (SAC, Ex. A, E). However, Defendants refused to "provide the Life Insurance Proceeds that secured the Loan" when those proceeds became payable upon Gerald Garson's death. (*Id.* at ¶ 45). Like Plaintiff's breach of contract claim, the constructive trust claim falls within the six-year statute of limitations. *Hirji*, 2017 WL 1169665, at *8. From the face of the SAC, the constructive trust claim began to accrue in 2016 when Robin Garson wrongly refused to pay Plaintiff with the Insurance Policy proceeds she received. (Id. at ¶¶ 4, 23, 32).

For all of these reasons, Defendants' limitations-based challenges on the SAC fail. The Court now proceeds to discuss the merits-based challenges.

**B.    Plaintiff Has Stated Claims for Relief for Breach of Contract, Unjust Enrichment, and Constructive Trust**

**1.    Applicable Law**

A complaint "survive[s] a [Rule 12(b)(6)] motion to dismiss" if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcraft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Considering in order Plaintiff's three causes of action, the Court observes that a plaintiff states a claim for breach of contract under New York law by proving the existence of a contract, the plaintiff's performance under the contract, the defendant's breach, and subsequent damages. *JP Morgan Chase* v. *J.H. Elec. of N.Y.*, 69 A.D.3d 802, 803 (2d Dep't 2010). In determining the existence of a contract, the "initial question for the court … is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" *Law Debenture Trust Co. of N.Y.* v. *Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp.* v. *Comm. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)).

Whether a contract is unambiguous, in turn, is determined by looking to the four corners of a contract. *Kass* v. *Kass*, 91 N.Y.2d 554, 566 (1998). A contract shows ambiguity where the terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person" who has

15

examined the agreement in its entirety. *Int'l Multifoods*, 309 F.3d at 83 (internal quotation mark and citation omitted). If a reasonably intelligent person could determine that a contract has more than one meaning, then resolution of the ambiguity becomes an issue for the trier of fact. *Boster-Burton* v. *Burton*, 92 A.D.3d 909, 910-11 (2d Dep't 2012).

Proceeding from contract to quasi-contract, a plaintiff who wishes to state a claim for unjust enrichment must allege "that [i] the other party was enriched, [ii] at that party's expense, and [iii] that it is against equity and good conscience to permit the other party to retain what is sought to be recovered[.]" *Georgia Malone & Co.* v. *Rieder*, 19 N.Y.3d 511, 516 (2012) (quoting *Mandarin Trading Ltd.* v. *Wildenstein,* 16 N.Y.3d 173, 182 (2011)).

Finally, a plaintiff can make a claim for a constructive trust if he shows the existence of "[i] a confidential or fiduciary relation, [ii] a promise, [iii] a transfer in reliance thereon and [iv] unjust enrichment." *Hirji*, 2017 WL 1169665, at *10 (internal quotation marks omitted) (quoting *Sharp* v. *Kosmalski*, 40 N.Y.2d 119, 121 (1976)).

## 2. Analysis

Defendants' arguments that Plaintiff's breach of contract, unjust enrichment, and constructive trust claims are meritless all fail. Taking the facts in the SAC as true — as the Court must at this stage of the litigation — the Court finds that Plaintiff has adequately stated a claim for each under New York law, as explained in the remainder of this section

*Breach of Contract.*  Plaintiff's breach of contract claim survives because he alleges adequately that Defendants caused him damages by violating their agreement to repay the $210,000 loan.  Defendants retort that Plaintiff cannot state a claim against Robin Garson personally because she only signed the Promissory Note — which Defendants contend is the only valid contract at issue — "in her capacity as attorney-in-fact for Gerald Garson."  (Def. Br. 18 (internal quotation marks and citation omitted)).[4]  Accordingly, Defendants argue, no valid contract exists between Plaintiff and Robin Garson.  (*Id.* at 19).

Plaintiff alleges a plausible breach of contract action first, because the SAC sufficiently alleges a valid contract embodying the oral agreement and the June 4 Letter.  (*See* SAC ¶¶ 17-18).  A valid contract exists under New York law if an agreement contains "an offer, acceptance of the offer, consideration, mutual assent, and intent to be bound."  *I.C. ex rel. Solovsky* v. *Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Kowalchuk* v. *Stroup*, 61 A.D.3d 118, 121 (1st Dep't 2009)).  These elements are met with respect to the oral agreement and the June 4 Letter.

Plaintiff alleges in the SAC that he offered to provide the loan to Robin and Gerald Garson to assist with their finances.  (SAC ¶ 14).  Robin and Gerald Garson accepted the offer for the loan, evidenced by the fact that Robin Garson received "most of the advances constituting the [l]oan."  (*Id.* at ¶ 15).  Plaintiff

---

[4]    Plaintiff explicitly brings a breach of contract action against Robin Garson in her individual capacity *and* as voluntary administrator of the Estate.  (SAC ¶ 33). Defendants, then, presumably move to dismiss the breach of contract claim only with respect to Robin Garson personally, and not in her position as Estate administrator.

pleads consideration for the oral agreement, namely, the Assets pledged by Robin Garson. (SAC ¶ 18; *see also id.*, Ex. A at 1). The oral agreement embodied mutual assent because Plaintiff offered to pay the loan on the personal promise by Robin and Gerald Garson that they would repay the loan and secure its repayment by the Assets. (*Id.* at ¶ 16). Finally, all parties demonstrated an intent to be bound because Plaintiff voluntarily agreed to pay the loan and the Garsons agreed to repay it, further exemplified by Robin Garson's execution of the June 4 Letter. (SAC *Id.* at ¶ 18; *see also id.*, Ex. A at 1).

While adequately pleading a contract, Plaintiff also adequately pleads its breach. The SAC recounts Plaintiff's performance under the oral agreement in the form of paying the Garsons $210,000. (SAC ¶ 14). Plaintiff further alleges that Defendants refused to repay Plaintiff when Robin Garson withheld the proceeds from Gerald Garson's Insurance Policy after they became available. (*Id.* at ¶ 33). Finally, Plaintiff properly alleges damages because he has not received repayment. (*Id.* at ¶ 34).

Notably, while the oral agreement and the June 4 Letter plausibly constitute a valid contract, there exists ambiguity in the terms of that contract, particularly when considered in conjunction with the October 2007 Promissory Note. On one hand, the June 4 Letter's language to "secure" the loan with the Assets suggests that Defendants intended to repay the loan when those Assets became payable. (SAC ¶ 18; *see also id.*, Ex. A at 1). On the other hand, the Letter recites an intention to formalize the agreement further "by written

contract." (SAC ¶ 18; *see also id.*, Ex. A at 1). Arguably, the relevant documents bespeak an ambiguity, a lack of "definite and precise meaning," as to when the loan would be paid. *Axiom Inv. Advisors, LLC* v. *Deutsche Bank AG*, No. 15 Civ. 9945 (LGS), 2017 WL 590320, at *3 (S.D.N.Y. Feb. 13, 2017) (internal quotation marks omitted) (quoting *Law Debenture*, 595 F.3d at 467); *see also Ellington* v. *EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014) (holding that a contract was ambiguous because it failed to disclose the precise meaning of the parties' intent and its language was susceptible to different interpretations). And if the terms of a contract are ambiguous, then "dismissal of the complaint . . . must be denied." *Ellington*, 24 N.Y.3d at 250.

*Unjust Enrichment.* Plaintiff plausibly alleges an unjust enrichment claim because the SAC, on its face, reveals that Defendants benefited at Plaintiff's expense by refusing to repay the loan. While Defendants may be correct (*see* Def. Br. 19) that there is little daylight between the facts giving rise to Plaintiff's breach of contract claim, on the one hand, and his unjust enrichment claim, on the other, the SAC makes clear that the two claims are pled in the alternative. "[A]nd since [D]efendants deny that [the parties] had a contract, or owe damages, the Court is unwilling to toss out one claim when another theory might prove to be the more appropriate at a later stage as discovery proceeds[.]" *Willman* v. *Zelman & Assocs., LLC*, No. 11 Civ. 1216 (KBF), 2012 WL 811512, at *5 (S.D.N.Y. Mar. 12, 2012); *see also id.* ("Both Fed. R[.] Civ. P. 8(e)(2) and the pleading rules of New York State law permit the pleading of contradictory claims alleging both breach of a contract, or in the alternative, a quasi

19

contract. Dismissal of [P]laintiff's alternative theories at this stage would violate the liberal policy of [R]ule 8(e)(2) which allows plaintiffs wide 'latitude' in framing their right to recover." (quoting *Seiden Assocs., Inc.* v. *ANC Holdings, Inc.*, 754 F. Supp. 37, 39-40 (S.D.N.Y. 1991))).

Assuming that Plaintiff's breach of contract claim fails, his unjust enrichment claim may still succeed. According to the SAC, Defendants were unjustly enriched at Plaintiff's expense because they received, but refused to repay, Plaintiff's loan. (SAC ¶ 33). Moreover, Defendants were unjustly enriched at Plaintiff's expense because Plaintiff believed that the $210,000 he offered to Defendants constituted a loan. (*Id.* at ¶ 14). Plaintiff substantiates his view that the $210,000 was a loan by attaching the June 4 Letter, which was allegedly prepared by Robin Garson to memorialize the Assets that were secured as repayment of the loan. (*Id.* at ¶¶ 18, 37; *see also id.*, Ex. A at 1). Because Defendants were unjustly enriched at Plaintiff's expense and have not yet repaid Plaintiff, it would be against equity not to give Plaintiff restitution. (*Id.* at ¶ 38).

*Constructive Trust.* Finally, Defendants assert that Plaintiff's constructive trust claim fails because there was no valid contract to secure the $210,000 loan with the Assets. (Def. Br. 23). However, Plaintiff has amply established all four elements of a constructive trust claim.

First, there exists a confidential relationship because Plaintiff is the step-son of Robin Garson and the son of Gerald Garson. *Dobbs* v. *Dobbs*, No. 06 Civ. 6104 (KMK) (MDF), 2008 WL 3843528, at *3 (S.D.N.Y. Aug. 14, 2008)

(citing *Reale* v. *Reale*, 485 F. Supp. 2d 247, 253 (W.D.N.Y. 2007) (finding that, while there is sometimes a triable issue of fact as to whether a relationship between father and son constitutes a fiduciary or confidential relationship, familial relations "usually satisfy [the] first element of constructive trust[.]")). Second, the SAC makes clear that Robin and Gerald Garson "personally promised" to repay Plaintiff. (SAC ¶ 16). Third, Plaintiff alleges that he made the loan to Defendants directly in reliance "upon Gerald Garson and Robin Garson's promise" to repay him for the loan. (*Id.* at ¶ 44). Finally, and provided Plaintiff's unjust enrichment claim stands, the SAC suggests that Defendants were unjustly enriched by receiving the loan and refusing to repay Plaintiff as promised. (*See supra* at 20).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at Docket Entry 22. The parties are further ORDERED to file a joint Case Management Plan and Scheduling Order **on or before July 17, 2017**.

SO ORDERED.

Dated:     July 6, 2017
              New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge